**Ex parte Walter O. MILES.**

**No. 18698.**

Court of Civil Appeals of Texas, Dallas.

June 19, 1975.

Frederick H. Shiver, Baker & Foreman, Dallas, for relator.

Jean White, Dallas County Child Support, Dallas, for petitioner.

GUITTARD, Justice.

Relator Walter Miles applied to us for a writ of habeas corpus, alleging that he had been illegally restrained of his liberty by the Sheriff of Dallas County under a void order of one of the domestic relations courts of Dallas County holding relator in contempt for failure to make child support payments. We granted bail pending a hearing in this court, and after the hearing we denied the writ and remanded relator to the custody of the sheriff.

Our decision is based on the holding that after relator had been informed that his children had not been adopted by his former wife's husband in accordance with relator's written consent to such adoption, the court had power to punish him for contempt for failure to resume the payments originally ordered in the divorce decree without a prior adjudication that the children had not been adopted.

The divorce decree, dated June 19, 1967, ordered relator to pay $100 per month to petitioner for support of their minor children, Robin and Kandis. He made these payments until 1970, when petitioner obtained his signature and affidavit on a document consenting to adoption of the children by William Lincoln Hosea, her husband at that time. Thereafter relator made no further support payments. Petitioner testified that she told relator shortly after the consent was signed that she did not go through with it because the children objected. However, the children used the name Hosea in school until some time in 1975. During all this time relator was not denied access to the children. Although he did not exercise all of his visitation privileges under the divorce decree, the children talked to him on the telephone several times and spent Christmas with him. Also, they were able to see him occasionally when they were visiting with his parents. The daughter, Kandis, spent Christmas 1974 and one or two months afterward with relator's sister.

In December 1974, and again in February 1975, petitioner contacted relator and asked him to resume the support payments. She told him that she desperately needed financial help for the children. He made no

payment. In March or April she moved to Arlington, Texas, and enrolled both children in school under the name of Miles, although, she said that Robin, the son, was known to the teachers and students as Hosea, since the counsellor suggested that he should continue to use that name until school was out.

Relator testified that after he signed the consent to adoption, he had no information that the adoption did not go through until December 1974, when petitioner asked him to resume support payments. He said he inquired at the school at Arlington and learned that Robin was enrolled in the name of Hosea. Before the contempt motion was filed, relator received a letter from the Dallas County Child Support Department demanding that he pay $100 per month beginning in January. He said that he then contacted attorney Jean White at the Child Support Department and informed her of the consent to adoption, but heard nothing until the motion was filed in late April.

Relator further testified that it was his "feeling" that the children had been adopted and that he should not have to pay for back child support until officially notified that they had not been adopted. He said that he did not think he should pay child support while they were going under another name.

At the close of the hearing, the court found relator in contempt and fixed his punishment at confinement in jail for a period of five days and ordered him further confined until he should purge himself of contempt by payment of $500 for support of his children.

The application for habeas corpus alleges that on the day of the hearing, after relator was arrested by the sheriff, he purged himself of the contempt by paying the sum of $500 to the Child Support Department, but that the judge, when presented with the receipt for this payment, refused to hear evidence concerning his purging from contempt until the next day. He then applied to this court for a writ of habeas corpus, and we ordered him released on bail.

Since relator has paid the amount he was ordered to pay, the only question before us is whether the order finding him in contempt and fixing his punishment at confinement in jail for five days is void. Relator contends that under the decisions of the Supreme Court in *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967), and of this court in *Ex parte Thompson*, 510 S.W.2d 165, 167 (Tex.Civ.App.—Dallas 1974, no writ), and *Ex parte Stroope*, 524 S.W.2d 378 (Tex.Civ. App.—Dallas, 1975, no writ), the trial court had no power to imprison him for contempt without first adjudicating his liability for the payments and allowing him a reasonable time thereafter to pay, because his signing the consent to adoption, together with petitioner's nonenforcement of the support order for more than two years, created an uncertainty concerning whether he was required to make the payments.

We conclude that no such uncertainty existed here as in the cases cited. Relator was not relying on a subsequent court order as in *Thompson* and *Stroope*. He relied only on the consent which he signed, although he admits that petitioner advised him more than five months before the hearing that no adoption had taken place. The judge had discretion to accept petitioner's testimony that she informed relator shortly after the consent was signed that she had decided not to go through with it because of the children's objection. The judge was also authorized to conclude from petitioner's testimony that relator was not really in doubt as to whether she had given him correct information because, in view of his contacts with the children, he had ample opportunity to determine whether they had been adopted. Although the punishment of five days in jail after relator had already paid the $500 in back support may seem harsh, we cannot say that the finding of contempt is without any support in the evidence. Consequently, in this collateral proceeding, we cannot hold the order void.

Relator remanded to custody.